# Ward v. Hurst.

May 25, 1945.

As Extended on Denial of Rehearing

Sept. 28, 1945.

Eldon S. Dummit, Attorney General, Harry H. Wilson and Forest H. Hume, Assistant Attorneys General, for appellant.

J. B. Johnson for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is an appeal from a judgment of the Lyon County Court rendered in this habeas corpus proceeding discharging the appellee and petitioner from serving a life sentence in the penitentiary, rendered by the Whitley circuit court on October 21, 1943, the petition being against the appellant, Dewey A. Ward, Warden of the Eddyville penitentiary.

The indictment at the trial, at which the life sentence was imposed, charged petitioner with having escaped from the jail of Whitley County while being confined therein upon a felony charge, and with being a habitual criminal. The facts as charged in the petition—and as recited in the judgment of the court appealed from—were and are: That on May 7, 1940, petitioner was indicted, tried and convicted in the Whitley circuit court of breaking into a railroad depot and sentenced to confinement in the state penitentiary for five years. On May 29, 1940, he was indicted, tried and convicted under a charge of sodomy committed on May 8th of that year and for which he was sentenced to confinement in the penitentiary for two years, the indictment charging him with being a habitual criminal. On September 22, 1942,

he was indicted for grand larceny which also charged him with being a habitual criminal, and he was convicted under that indictment on October 1, 1942. While confined in the county jail awaiting transportation by the sheriff to the penitentiary he escaped jail and, as we have stated, it was upon the trial of the latter indictment that he was given the life sentence. After petitioner's conviction under the first two indictments he was paroled and it was after then that he committed the other two felonies indicated.

It will be perceived that each of the crimes committed by petitioner were felonies, and it would seem to be near to cruelty to deprive him of enjoying the goal which he had so persistently sought. Nevertheless he is entitled to all constitutional guaranties that go to make up "due process of law."

At each of petitioner's trials he entered a plea of guilty and one of the grounds alleged in his petition for the writ is that the court at the trial of the last indictment, whereat petitioner received his life sentence, in its instruction to the jury—after reciting his former convictions—said: "You will, therefore, find the defendant, Junior Hurst, guilty as charged in the indictment of being an habitual criminal and punished—only one punishment you can give him—at confinement in the state penitentiary for life." It is alleged in appellee's petition, and relied on in brief filed in this court by petitioner's counsel that in giving that instruction to the jury the court deprived him of the benefits of a trial by jury in violation of section 7 of our Constitution which is a part of our Bill of Rights, and that contention will first be disposed of.

We have held in cases—so numerous that it would be a waste of time and space to list them in this opinion —that a plea of guilty made by defendant in open court to an indictment charging either a felony or misdemeanor, dispenses with the necessity of the court trying the case to submit the issue of guilt or innocence to the jury, and that a failure to do so does not deprive defendant on trial to his constitutional right to a jury trial. The same rule of practice is also approved by the courts of other states, as is pointed out in the text of 14 Am. Jur. 950, sec. 269 and notes thereto. Such interpretation is in recognition of the fact that neither constitutional nor

statutory law requires futile action. Therefore, when an indicted defendant solemnly enters a plea of guilty in entering upon his trial the judge of the court has the authority to accept his plea of guilty and proceed with the trial accordingly.

But it is equally as strongly urged that while the rule is as stated above, as applicable to the issue of guilt or innocence, it does not apply to the fixing of defendant's punishment, and that the court erred in not submitting that question to the jury at the trial at which the life imprisonment sentence was pronounced. But the law appears to be overwhelming, with none to the contrary, that section 7 of our Constitution guaranteeing trial by jury applies only to *the issue of guilt or innocence* under a plea of not guilty, and that the mandatory provision for a jury trial has no reference to the amount of punishment that should be inflicted upon conviction, and which is clearly pointed out in the text of 31 Am. Jur. 575, section 27, which for the benefit of members of the bar who may not possess that publication we herewith insert: "The constitutional right of trial by jury is limited to the question of guilt or innocence, and does not extend to the determination of term of imprisonment or punishment. This follows since it was no essential part of a jury trial at common law that the jury should also fix the punishment if they convicted an accused. A statute requiring the infliction of the death penalty upon one convicted of killing a human being does not contravene a constitutional provision giving the jury in all criminal cases the right to determine the law and the facts. A fortiori, where a defendant pleads guilty of an offense charged, he is not constitutionally entitled to a jury trial in the determination of term of imprisonment or punishment. Also, the adoption of a new Constitution preserving the right of trial by jury 'as heretofore enjoyed' has been construed not to include the right, which has existed by statute for many years, of having the jury assess the punishment in criminal cases whenever there is an alternative or discretion in regard to it."

The court in the case of Mack v. State, 203 Ind. 355, 180 N. E. 279, 83 A. L. R. 1349, and the annotations thereto on page 1362, substantiates the inserted text in every particular, even in jurisdictions where the Indeterminate Punishments are provided by statute (perhaps other than capital) and where the jury is required to only pass upon

the guilt or innocence of the defendant on trial. That rule prevailed in this Commonwealth so long as our Indeterminate Punishment statute prevailed and which was upheld by us in a number of our opinions. Our Habitual Criminal statute is section 431.190 (1130 of Carroll's 1936 Edition of Kentucky Statutes) and it says: "Every person convicted * * * a third time for felony, *shall* be confined in the penitentiary during his life." (Our emphasis.) The punishment is therefore mandatorily fixed by the Legislature. But even in the absence of the above-cited authorities it would also be a futile provision of the law to require the jury to fix the punishment when the provided law had mandatorily done so. It is therefore conclusive that this alleged error, which it is claimed by counsel rendered the judgment void, is without merit.

Another ground relied on by petitioner, and argued by counsel to procure the writ prayed for, is that all of the indictments following the conviction of the first felony by petitioner failed to state a public offense and that they were so irregularly drafted as not to support a conviction thereunder. Each of them stated the particular offense charged therein, and that defendant was an habitual criminal. However, the draftsman of the last three indictments inserted therein verbatim all previous indictments of petitioner, which was wholly unnecessary and pure surplusage, since the inserted indictments were evidentiary only of petitioner's prior convictions, and since it is not necessary to insert in an indictment the evidence of the prosecution, a nonobservance of that well-known rule will not render an indictment defective.

Counsel also argues that because succeeding indictments, following the first one, incorporated therein all prior indictments against petitioner, he was placed in jeopardy at the trial of succeeding indictments. But in view of the fact that such insertions were unnecessarily made and can be considered only as surplusage, as above pointed out, the argument of counsel as to former jeopardy is without merit even if it had been made at the trial of petitioner's last indictment in which he was given a life sentence, but which was not done. Moreover, we held in the cases of Herndon v. Commonwealth, 105 Ky. 197, 48 S. W. 989, 20 Ky. Law Rep. 1114, 88 Am. St. Rep. 303; Hall v. Commonwealth, 106 Ky. 894, 51 S. W. 814, 21 Ky. Law Rep. 520; McIntyre v. Common-

wealth, 154 Ky. 149, 150 S. W. 1058; Turner v. Commonwealth, 191 Ky. 825, 231 S. W. 519 and Allen v. Commonwealth, 272 Ky. 533, 114 S. W. 2d 757, that our Habitual Criminal statute is "not unconstitutional as imposing a second punishment for a former offense." See notes to the section supra of KRS in the volume, page 1793, issued by the Statute Revision Commission, containing notes to all of the sections in that edition.

It is furthermore argued, as sustaining grounds for the habeas corpus writ prayed for, that (a) the court at the trial of the last indictment against petitioner failed to appoint counsel for him, and (b) that the court improperly overruled his motion to prosecute an appeal in forma pauperis to this court from the judgment fixing his punishment at life imprisonment. However, we have in a number of cases determined both arguments (a) and (b) against the petitioner.

Two of the later cases so determining argument (a) are, Hamlin v. Commonwealth, 287 Ky. 22, 152 S. W. 2d 297 and Moore v. Commonwealth, 298 Ky. 14, 181 S. W. 2d 413, and in each of them the question was presented on direct appeal to this court from the judgment of conviction. The convicted defendants in each of those cases made no motion in the trial court for the appointment of counsel to represent him, and we held that in the absence of such motion and evidence sustaining reasons therefor, we would not consider such alleged error as grounds for a reversal.

Like adverse determinations with reference to argument (b) were made by us in the case of Marcum et al. v. Wallace, 240 Ky. 444, 42 S. W. 2d 531, 532, in which we said:

"A party desiring to prosecute an appeal in forma pauperis should, of course, first make application to that end in the circuit court. If his application there be denied, he should file in this court a certified copy of the judgment from which he desires to appeal, a certified copy of the order of the circuit court overruling his motion to prosecute that appeal in forma pauperis, such affidavits as he may deem necessary to establish his right to appeal in forma pauperis, and a motion for a rule against the clerk and/or official stenographer to show cause why they or either of them should not furnish without cost to the appellant such parts of the record on

appeal as is their duty to prepare and furnish for appeals.

"When this is done, a rule or rules will issue as requested. On the response of these officers being filed, the case will be submitted for such action as this court thinks proper on the showing made. No such procedure was followed here."

Other cases to the same effect are: McIntosh v. Armour & Co. of Illinois, 279 Ky. 517, 131 S. W. 2d 393 and Smith v. Buchanan, 291 Ky. 44, 163 S. W. 2d 5.

It is furthermore argued by counsel for petitioner that the court erred at the trial of the second indictment in giving any effect to the Habitual Criminal statute affecting his punishment since the first two indictments were tried at the same term of the court, and it did not appear that the second offense was committed *after* the conviction of the first one, as was held to be necessary in the cases of Cobb v. Commonwealth, 267 Ky. 176, 101 S. W. 2d 418 and Coleman v. Commonwealth, 276 Ky. 802, 125 S. W. 2d 728. But by agreement of parties at petitioner's last trial the convictions under the first two indictments should be treated as only one conviction and which was done at the trial in which petitioner was given the life sentence.

We have up to this point determined all of the grounds relied on by petitioner in his application in this habeas corpus proceeding. But there is another all-sufficient reason why the application should have been denied and which is: That petitioner relied on practically the same grounds in his motion for a new trial of his last conviction with attached life imprisonment, or could have been relied on, but which the court overruled and from which he prosecuted no appeal to this court. The grounds relied on in this collateral attack of the judgment convicting petitioner and sentencing him to life imprisonment, if error—even to the extent of total invalidity of some of the trial court's rulings—would have availed petitioner on his appeal. But he failed to prosecute one, and also failed to take the necessary steps to perfect his appeal as hereinbefore pointed out. The due process clause of our Constitution does not guarantee to the citizen more than one hearing in a court of competent jurisdiction for the protection of his rights growing out of the same facts. Hence we held in conformity there-

with, in the case of Stonefield v. Buchanan, 289 Ky. 386, 158 S. W. 2d 970 that (quoting from syllabi):

"1. Where petitioner for writ of habeas corpus failed to set up any ground which could not have been considered by the Court of Appeals on petitioner's appeal from conviction, writ of habeas corpus was properly denied.

"2. A writ of habeas corpus does not lie to grant remedies available on appeal."

The same rule of practice with reference to habeas corpus proceedings was also approved by us in the prior case of Department of Public Welfare v. Polsgrove, County Judge, 250 Ky. 517, 63 S. W. 2d 603, and by an opinion of the United States Circuit Court of Appeals, Sixth Circuit, in the case of Stonefield v. Buchanan, 124 F. 2d 23.

It is also urged that petitioner was denied due process of law at the trial of this case contrary to the rights guaranteed him by the Federal Constitution. Amend. 14, but we have searched the record in vain to find any fact or action on the part of the court sustaining that argument and which we now declare to be without merit.

Having determined all of the questions raised in support of the judgment appealed from and having found them to be without merit, it follows that the judgment should be and it is reversed with directions to the trial court to set it aside and then dismiss the application.

Whole court sitting.